Brannin v. The Mercer County Mutual Fire Insurance Co.

BRANNIN AND BAILEY *vs.* THE MERCER COUNTY MUTUAL FIRE INSURANCE COMPANY.

The condition in an insurance policy issued to C. & Co., was as follows· " any member of this company who shall have been assessed for the pay-

ment of any loss or damage by fire, neglecting or refusing to pay such assessment for thirty days after he or she shall have had notice of the same, shall forfeit his or her policy, provided the premium note or notes deposited with the company, after paying any losses or expenses which may have accrued thereon, shall be given up to him or her on demand ;" the policy was assigned January 13th, 1855, the transfer approved by the company March 5th, 1855, and the premium note of C. & Co. given up, and a new note taken from the assignees. An assessment had been made on the note of C. & Co. October 3d, 1854, notice of which assessment was given to them and the plaintiffs May 17th, 18 5 ; the assessment was not paid : in an action on the policy, brought by the assignees to recover for a loss by fire, *held*, that the validity of the policy was not affected by nonpayment of the assessment against C. & Co., they not being members of the company when notice of the assessment was given to them.

On motion for new trial.

Argued before the CHIEF JUSTICE and Justices VAN DYKE, VREDENBURGH, and WHELPLEY.

*W. L. Dayton*, for defendants.

*B. F. Randolph*, for plaintiffs.

The opinion of the court was delivered by the

CHIEF JUSTICE. To an action of covenant on a policy of insurance against loss by fire, the defendants plead, by way of defence, that the policy is forfeited by a refusal on the part of the holder to pay an assessment made, according to the rules of the company, for the payment of loss or damage by fire. Upon the trial, the jury were instructed that the defence was not sustained, and this instruction by the court constitutes the sole ground of the application for a new trial.

The policy is dated on the first of February, 1848, and continues for ten years. It was originally issued to Curtis and Co., by whom the original premium note was given. It passed by assignment to the plaintiffs, the grantees of the premises insured, on the thirteenth day of January, 1855. This transfer to the plaintiffs was approved by the company on the fifth of March, 1855, at which time the

original premium note given by Curtis & Co. was given up, and a new premium note taken from the plaintiffs. The plaintiffs' note is dated on the fifteenth of January, 1855, the day of the transfer of the policy.

On the third of October, 1854, ten per cent. was assessed against Curtis & Co. upon their premium note. On the seventeenth of May, 1855, notice of this assessment was given to Curtis & Co. and to the plaintiffs. The assessment was not paid. The insured premises were destroyed by fire on the fourth of January, 1856. The tenth article of the " deed of settlement," or conditions annexed to the policy, under which it is insisted that the policy is forfeited, is as follows : " Any member of this company, who shall have been assessed for the payment of any loss or damage by fire, neglecting or refusing to pay such assessment for thirty days after he or she shall have had notice of the same, shall forfeit his or her policy, provided the premium note or notes deposited with the company, after paying any losses or expenses which may have accrued thereon, shall be given up to him or her on demand."

It is clear that the case proved is not within the letter of the contract. It is only a *member* of the company who shall have been assessed for the payment of any loss that can incur the forfeiture by nonpayment of the assessment. At the time of this assessment the plaintiffs were not members of the company. The assessment was not made against them nor upon their note. The fire had occurred and the assessment had been made before they became members. The assessment for the loss was properly made against Curtis & Co. upon their note. The assignment of the policy of insurance by them to Remsen & Co., as mortgagees of the insured premises, did not affect their rights or liabilities as members  They still retained an insurable interest in the premises which remained insured, and by the terms of the charter their membership continued. *Charter*, § 2 ; *Parsons on Mer. Law* 532.

But they were not members when the notice to pay the assessment was given, nor when the neglect or refusal to pay the assessment occurred. After they ceased to be members, no act or default of theirs could affect the rights of the plaintiffs. *Forster* v. *Eq. Mutual L. Ins. Co.*, 2 *Gray* 219 ; *Tillou* v. *Kingston Mutual Ins. Co.*, 1 *Selden* 406.

There is then, by the terms of the condition, no forfeiture incurred. There is no violation of the letter of the contract, nor is the forfeiture within the spirit of the contract. It could not have been within the contemplation of the contracting parties. The design of the tenth article was to insure, under pain of forfeiture, prompt payment by the members of the company of all assessments for losses incurred, an object of primary importance in the successful operation of a mutual company. The party insured deposits his premium note, upon which he is liable to be assessed and to be sued upon failure to pay any assessment. He is liable moreover, while he remains a member, by a neglect or refusal for thirty days after notice to pay an assessment, to forfeit his policy. This forfeiture can have no application to a person who has ceased to be a member. He has no policy to forfeit. He is still liable upon his note for all losses incurred while he remained a member. By the conditions of the policy, article 2, he cannot reclaim his deposit note without a proportionate deduction for all losses and expenses accrued previous to demanding the same. The error of the company consisted in surrendering the note of Curtis & Co. before the losses incurred while they were members had been paid.

Upon what principle was this loss to be assessed upon the note of the plaintiffs? It occurred before they became members. It could not, by the rules of the company, be assessed against them. They could not be sued for it, nor compelled to pay it. And surely it could not have been within the contemplation of the contracting

parties that the insurer should forfeit his policy by the non-payment of an assessment for which he was not liable, nor for the default of a third party, for whom he was not responsible, and over whose conduct he had no right of control. Had the note of the party originally insured been suffered to remain, and the company have accepted that note as proper security upon the transfer, as in the case of *Durar* v. *Insurance Co.*, 4 *Zab.* 171, a different question would have been presented.

By the seventh section of the company's charter (*Pamph. Laws* 1843, *p.* 159,) the grantee or alienee of premises insured, having the policy assigned, may have the same ratified and confirmed to him for his own use and benefit ; and by such ratification and confirmation such grantee or alienee shall be entitled to all the rights and privileges, and be subject to all the liabilities to which the original party to whom the policy issued was entitled and subjected. But this cannot mean that the grantee should be subject to the penalties or forfeitures incurred by the default or omission of his assignor. It must mean simply that his privileges and liabilities as a member of the company should be the same as if he had been an original insurer, and not an assignee of the policy. The forfeiture of the policy must have been incurred, if at all, under the provisions of the tenth article of the deed of settlement. But the plaintiffs are neither within the letter or the spirit of that article. To incur such a forfeiture the refusal to pay must be by a member of the company who is legally liable for the assessment.

There was no error in the instruction given to the jury, and the motion for a new trial must be denied.